OPINION *Page 2 
{¶ 1} Defendant-appellant Christopher R. Sidders appeals his conviction and sentence entered by the Delaware County Court of Common Pleas, on one count of burglary, in violation of R.C. 2911.12(A)(3), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 9, 2007, the Delaware County Grand Jury indicted Appellant on one count of burglary, in violation of R.C. 2911.12(A)(3), a felony of the third degree; and one count of violating a protection order, in violation of R.C. 2919.27(A)(1), a felony of the fifth degree. Appellant appeared for arraignment on November 19, 2007, and entered a plea of not guilty to the Indictment. The trial court scheduled the matter for trial on January 31, 2008.
 {¶ 3} The following evidence was adduced at trial. Donna Gardner testified she provides home healthcare to her brother-in-law, Jack Maroney, who lives in Apartment E at an apartment complex on Vernon Avenue, in Delaware, Ohio. Macara Neibarger, the victim herein, lives in Apartment C of the same complex. Gardner stated she met Appellant on June 8, 2007. On October 18, 2007, Appellant came to Maroney's apartment and asked to use the telephone. After using the telephone, Appellant left. Gardner observed him enter Neibarger's apartment through the back door. Later, when Gardner was taking out the trash, she saw Appellant exiting Neibarger's apartment through the front door. Although at trial Gardner could not recall whether Neibarger was *Page 3 
at her apartment that day, she had previously told police Neibarger's truck was not in the parking lot.
 {¶ 4} Macara Neibarger testified she lives in an apartment with her four year old son, Evan Sidders. Appellant is Evan's father. Neibarger explained she and Appellant dated on and off for eight years, commencing in March, 1999. In January, 2007, Neibarger ended the relationship and filed for a civil protection order. The protection order was granted on March 19, 2007, with an expiration date of March 19, 2013. The civil protection order prohibited Appellant from, inter alia, entering Neibarger's residence and from being within 500 feet of Neibarger. Neibarger acknowledged she allowed Appellant to be near her when he visited their son. Neibarger added she had never given Appellant permission to enter her home when she was not present.
 {¶ 5} Neibarger recalled, on October 18, 2007, she went to juvenile court to attend a hearing involving Appellant. The hearing was scheduled for 1:00pm, but Appellant did not appear. At approximately 2:00pm, Neibarger returned to her apartment and picked up her boyfriend. Neibarger drove her boyfriend to work, picked up her niece from school, and drove the girl to her mother's home. Following a conversation with her grandmother, who lived with her mother, Neibarger checked the caller ID and saw an incoming call from her neighbor's telephone number. Neibarger returned to her apartment at 9:00pm with her son and thirteen-year-old nephew. Neibarger noticed a number of things out of place in her apartment. She found an ashtray spilled on the floor, a cigar/cigarette butt on the side of the sink, a pair of sunglasses on top of her boyfriend's wallet placed next to an open can of chewing tobacco *Page 4 
on the kitchen table, and a box of snack cakes, which she stored on top of the refrigerator, on the microwave.
 {¶ 6} Neibarger left the apartment to pick up her boyfriend from work. Throughout the course of the rest of the evening, Neibarger noticed other things which were either out of place or did not belong to her. A bottle of gin kept in the freezer had been finished and the bottle refilled with water. Outside on the back porch, Neibarger and her boyfriend found a drinking glass, a cigarette and an empty cigarette package. Neibarger and her boyfriend started to look around the house and found jewelry and a house key missing. At approximately 3:30am, Neibarger went to the police station and filed a report. The next day, Neibarger spoke briefly with Officer Strasser at the Delaware police station. On Saturday, October 20, 2007, Neibarger returned to the police station and further discussed the matter with Officer Strasser.
 {¶ 7} At trial, Neibarger identified the items she had discovered missing from her home on the evening of October 18, 2007. Neibarger testified the items had been in her home on the morning of the 18th, prior to her leaving her house. Specifically, Neibarger testified a bracelet, as well as the engagement ring and wedding band her father gave her mother, were in a jewelry box in her bedroom. Neibarger noted Appellant did not have permission to enter her bedroom after January, 2007, and had not entered her bedroom two days earlier when he was visiting their son. A necklace her grandmother had given her was on a shelf in the linen closet where she had placed it that morning prior to taking a shower. Her MasterCard credit card had been inside a purse in the living room closet. Various membership cards had been in a drawer in the kitchen. Neibarger emphasized she did not give Appellant permission to enter her home on *Page 5 
October 18, 2007. Neibarger found Appellant's sunglasses on the kitchen table, placed on top of her boyfriend's wallet. She took the sunglasses as well as the cigarettes and empty pack she found on the back porch to the police station. Neibarger noted Appellant had not been at her home on October 17, or 18, 2007, nor had she spoken with him on either day.
 {¶ 8} Officer Nicholas Strasser of the Delaware Police Department testified he was dispatched to Vernon Avenue on the evening of October 18, 2007. When the officer arrived at Neibarger's apartment he found Appellant sitting at a table on the patio at the back of the residence. Officer Strasser noted Appellant appeared to be intoxicated, slurring his speech. As Appellant was in violation of a protection order. Officer Strasser placed him under arrest. The officer conducted a pat down search for safety purposes and found Appellant's pockets were full to the point of bulging. Appellant was transported to the city jail where the items were removed from his person and inventoried. Officer Strasser had no reason, at that point, to believe the property did not belong to Appellant. The property was returned to Appellant prior to his being transported to the Delaware county jail. Officer Strasser later learned the property did not belong to Appellant, and he returned to the county jail to seize the items for evidence.
 {¶ 9} The officer identified the property which had been found on Appellant's person. The items included a gold slade key, a gold chain with a pendant, a MasterCard in Neibarger's name, the necklace and bracelet described by Neibarger, various membership and shopping cards, a number of photographs, and a house key from the home of Neibarger's boyfriend's mother. A diamond ring and a wedding band *Page 6 
were found on Appellant's person following his transport to the county jail. Officer Strasser stated while he was processing Appellant into city jail, Appellant made reference to having a pair of sunglasses, but the officer never located a pair on Appellant's person. The officer recalled Neibarger returned to the station on October 20, 2007, and identified these items as the items missing from her home.
 {¶ 10} After hearing all the evidence and deliberations, the jury found Appellant guilty as charged. At a sentencing hearing on March 10, 2008, the trial court ordered Appellant to serve an aggregate term of imprisonment of eighteen months.
 {¶ 11} It is from this conviction and sentence Appellant appeals, raising as his sole assignment of error.
 {¶ 12} "I. APPELLANT'S CONVICTION FOR BURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 13} In his first assignment of error, Appellant challenges his conviction for burglary as being against the manifest weight of the evidence.
 {¶ 14} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio52, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the *Page 7 
trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.t its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins,78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio52, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 15} Appellant was convicted of one count of burglary, in violation of R.C. 2911.12(A)(3), which provides:
 {¶ 16} "No person, by force, stealth, or deception, shall:
 {¶ 17} "* * *
 {¶ 18} "Trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense."
 {¶ 19} Appellant maintains the State produced only minimal circumstantial evidence to establish he trespassed in Neibarger's residence on October 18, 2007. He submits there was significant evidence presented to show he was in Neibarger's residence with her permission on October 16, 2007, and was outside the residence on October 17, 2007. Appellant explains he could have taken the items on the 16th or 17th, *Page 8 
and as there was no evidence placing him at Neibarger's apartment on the 18th, his conviction for burglary as charged in Count One of the Indictment was against the manifest weight of the evidence. We disagree.
 {¶ 20} "Circumstantial and direct evidence inherently possess the same probative value." State v. Jenks (1991), 61 Ohio St.3d 259, 272. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the * * * fact-finding functions is concerned, all that is required of the [fact-finder] is that i[t] weighs all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." Id. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990), 51 Ohio St.3d 160, 168 (Citation omitted). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Id. (Citation omitted).
 {¶ 21} The evidence at trial revealed Appellant was visiting his son in Neibarger's apartment on October 16, 2007, and was in the residence with her permission. Neibarger testified Appellant stayed in the living room, making only one trip to the kitchen. When Appellant left, Neibarger did not notice a cigarette on the side of the kitchen sink or a pair of sunglasses on the table, as she did on the 18th
. Appellant arrived at the apartment on October 17, 2007, and knocked on the door, but no one answered. He subsequently left.
 {¶ 22} Neibarger stated the items found on Appellant's person were in her home on the morning of October 18, 2007. Some items of jewelry had been in a jewelry box in Neibarger's bedroom. She noted Appellant did not have permission to be in her *Page 9 
bedroom after January, 2007, and had not entered the room on October 16, 2007. Further, Gardner testified after Appellant used the phone at Jack Maroney's apartment, she observed him enter Neibarger's apartment through the patio door, and exit through the front door. Carol Debarr, Neibarger's mother, testified her caller-ID showed a call from Jack Maroney on October 18, 2007. Although there was no sign of forced entry, Neibarger explained Appellant had shown her how to open the sliding glass door on the patio when the door was locked.
 {¶ 23} After reviewing the evidence in this case, we find there was more than ample circumstantial evidence from which the jury could make a reasonable inference of Appellant's guilt. Viewing the evidence in a light most favorable to the prosecution, we conclude a rational trier of fact could find Appellant guilty of burglary beyond a reasonable doubt. We find Appellant's burglary conviction was not against the manifest weight of the evidence.
 {¶ 24} Appellant's sole assignment of error is overruled.
 {¶ 25} The judgment of the Delaware County Court of Common Pleas is affirmed.
Hoffman, P.J., Gwin, J. and Wise, J., concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1